IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02109-WJM-KLM

SUSAN BURNS,

      Plaintiff,

v.

FREDDIE MAC,
BANK OF AMERICA, and
DOES 1 THROUGH 30, INCLUSIVE,

      Defendants.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendant Bank of America N.A.'s Motion to Dismiss Plaintiff's Complaint** [# 10] (the "Motion").[1]  On September 10, 2013, Plaintiff filed a Response [#14].  On September 24, 2013, Defendant Bank of America ("Bank") filed a Reply [#15].  Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c)(3), the Motion has been referred to this Court for a recommendation regarding disposition.  *See Order Referring Case* [#7]; *Memorandum* [#12].  The Court has reviewed the Motion, the Response, the Reply, the entire docket, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#10] be **GRANTED in part** and **DENIED in part**.

_____

[1]  [#10] is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this Recommendation.

## I.  Statement of the Case

Plaintiff asserts five causes of action and seeks injunctive relief, actual damages, punitive damages, costs, and fees for Defendants' alleged actions relating to the mortgage on Plaintiff's residence located at 548 South Pearl Street, Denver, Colorado, 80209 (the "Property").  *See generally Compl.* [#5].  Specifically, Plaintiff brings the following claims against all Defendants:  breach of contract, usury, fraud and deceit, intentional misrepresentation, and slander.  *Id.* at 10-17.[2]

In support of these claims, Plaintiff alleges that in June 2001 she signed a promissory note (the "Note") in the amount of $275,000 amortized over 30 years and a deed of trust (the "Deed of Trust") relating to the Property.  *Id.* at 3.  The Note was later sold to Defendant Bank.  *Id.* at 3-4.  Plaintiff states that due to health problems in 2005 she missed two payments due under the Note.  *Id.* at 4.  She maintains that the following month she sent payment for the two missed months and the current month but that Defendant Bank refused to accept the payments and explained to her that the Property was in foreclosure and could not be redeemed without paying an additional $30,000 in default interest and fees.  *Id.*  Plaintiff further alleges that after negotiations with Defendant Bank she reached an agreement with the Bank and resumed making monthly payments.  *Id.*

However, Plaintiff avers that in the summer of 2007 Defendant Bank began to foreclose on the Property and in September 2007 refused to accept her payments toward the Note.  *Id.*  Plaintiff maintains that when she spoke to an employee of Defendant Bank

---

[2]  Plaintiff initially filed her Complaint on July 9, 2013 in the District Court for the City and County of Denver, Colorado (the "State Court Action").  *See Notice of Removal* [#1] at 1.  However, on August 7, 2013 Defendant Bank removed this action based on diversity jurisdiction.  *Id.* at 2-4.

regarding the refused payments, she was told that "the title work had not been properly filed by [Defendant Bank] for the 2005 modification [and], therefore[,] it was not binding." *Id.* Plaintiff further alleges that when she suggested that Defendant Bank file the title work, Defendant Bank's "representative stated that they no longer wished to honor the modification terms and it was '*your word against ours*' that the modification ever existed." *Id.* at 4-5 (emphasis in original). Plaintiff contends that because the Property was in foreclosure she was unable to obtain financing from any other bank. *Id.* at 5.

Plaintiff maintains that after seeking assistance from the United States Department of Housing and Urban Development, Defendant Bank "finally agreed to consider a modification." *Id.* She further states that she submitted the paperwork required by Defendant Bank but that over the course of two years she was required to correspond with many different employees of Defendant Bank and had to resubmit the paperwork many times. *Id.* Plaintiff avers that "[s]everal times she was accepted into 'trial' modification periods in which she timely made all payments. But each time the paperwork to process her modification was lost or she was told [it] was 'incomplete,'" and that "rather then telling her something was missing, her payments would abruptly be refused and a foreclosure sale date would be set." *Id.* Plaintiff argues that she was never given proper notification of any foreclosure on the Property. *Id.*

According to Plaintiff, in or around 2009 she discovered that Defendant Freddie Mac had purchased the Note. *Id.* Plaintiff states that she spoke to an employee of Defendant Freddie Mac and reached an agreement regarding a modification to the Note and was told that the documents would be mailed to her for signature. *Id.* at 6. She states that the paperwork she received "[m]any months later" did not reflect the agreed upon terms. *Id.*

3

Plaintiff maintains that after she refused the new terms, Defendant Bank set a foreclosure sale date either "in retaliation or as inducement." *Id.* at 7.  Plaintiff contends that she and Defendant Bank have been repeating this cycle for several years and that "for nearly eight years [the Property] has been held in a constant state of foreclosure in which [Defendant Bank] would postpone the sale date but never actually remove the [P]roperty from the foreclosure rolls causing it to be continually reported to credit agencies as being in foreclosure, even when [Plaintiff] was in trial modification periods, making payments to [Defendant Bank] or working with [Defendant Bank] to modify the loan." *Id.*  Plaintiff further alleges that "since 2007 [Defendant Bank] has been reporting that [Plaintiff] is delinquent and in foreclosure on ***two*** loans when she only has one loan with [Defendant Bank]." *Id.* (emphasis in original).

Plaintiff maintains that by reporting to credit agencies that she was not making payments on the Note, Defendant Bank made false and slanderous statements that damaged her credibility, "destroyed her credit[,] and caused her great economic hardship by preventing her from obtaining refinancing" on a rental property.  *Id.* at 7-8.  She alleges that Defendant Bank's allegedly false reporting caused her a variety of financial harm including lost income, paying higher insurance premiums, and being unable to obtain credit for certain purchases.  *Id.* at 8.  She maintains that the allegedly false reporting also "interfered with her attempts to obtain employment," among other things.  *Id.* at 8.  Plaintiff contends that Defendant Bank had "full knowledge of the damage it was doing."  *Id.*

Plaintiff alleges that in August 2012 she contacted Defendant Bank's CEO and that, as a result, she was put in contact with an employee of Defendant Bank who reached

agreement with her regarding a modification to the Note.[3] *Id*. at 8.  She contends that she made trial payments while waiting for the paperwork documenting this agreement but that when she received the documents in November 2012, they did not reflect the agreed upon terms. *Id*. at 8-9.  Plaintiff maintains that when she was put in touch with another employee of Defendant Bank, he "refused to honor the agreement and threatened [Plaintiff] to sign the documents as they were drafted or a new foreclosure date would be set." *Id*. at 9.

Plaintiff states that she then retained counsel who sent letters to Defendant Bank on April 19, 2013 and May 7, 2013 describing the situation and asking for a settlement on terms specified in the letters. *Id*.  Plaintiff alleges that Defendant Bank refused to discuss a modification of the Note and instructed Plaintiff to resubmit paperwork requesting a modification. *Id*. at 10.  Plaintiff states that her "credit continues to be damaged by [Defendant Bank's] refusal to correct its own errors" and that her "life has been destroyed by [Defendant Bank] although her only mistake was in making two late payments over eight years ago when she was too ill to work." *Id*.

In the Motion, Defendant Bank argues that Plaintiff's claims are subject to dismissal.[4] Specifically, Defendant Bank argues that Plaintiff's breach of contract claim, fraud and deceit claim, and her intentional misrepresentation claims are all barred by Colorado's Credit Agreement Statute of Frauds ("CCASF"), Colo. Rev. Stat. § 38-10-124. *Motion* [#10] at 6-8.  Defendant Bank further argues that Plaintiff's breach of contract claim also fails

---

[3] Although this allegation appears to be inconsistent with the previous allegation that the Note was sold to Defendant Freddie Mac in 2009, for the purposes of considering a motion to dismiss, the Court accepts the well-pled allegations of the Complaint as true.

[4] The Court summarizes only those arguments presented which merit analysis.

because Plaintiff fails to allege an essential element of the claim, namely performance by Plaintiff. *Id.* at 8-9. Defendant Bank contends that Plaintiff's usury claim fails as a matter of law because the interest rate set in the Note was not usurious. *Id.* at 11. Finally, Defendant Bank argues that the statute of limitations bars Plaintiff's slander claim. *Id.* at 12-13.

In her Response, Plaintiff argues that the CCASF does not bar any of her claims because "written correspondence between Plaintiff and Defendant [ ] clearly outlines the agreement to modify and the terms of the modification and demonstrates Plaintiff's belief in Defendant's representations." *Response* [#14] at 1. Plaintiff further argues that

> Defendant accepted Plaintiff's payments under the terms outlined and[,] therefore[,] accepted the agreement to modify the loan under the documented terms. If Defendant's calculated refusal to put their agreement in writing was intended to mislead Plaintiff of Defendant's true intention to foreclose would that not constitute fraud?

*Id.* at 2. Plaintiff argues that her slander claim is not barred by the statute of limitations because she only discovered in October 2012 that Defendant has not corrected information it reported to the credit bureaus relating to alleged late payments and also discovered that Defendant Bank had reported that Plaintiff was in default on two loans. *Id.* at 2-3. Plaintiff further contends that her breach of contract and usury claims do not fail as a matter of law because "Defendant demanded a default rate of interest on payments tendered by Plaintiff, but refused by Defendant." *Id.* at 3. And that "Defendant demanded an amount of interest over the legal amount stated on the note," increased the rate by more than contractually allowed, and "added charges to the amount to bring the loan current that were more than 50% higher than the amount actually owed." *Id.* at 3-4. Finally, Plaintiff addresses the basis for her request for injunctive relief. *Id.* at 4-5.

In its Reply [#15], Defendant Bank revisits the arguments advanced in its Motion. *Reply* [#15] at 4-9, 11. It also attacks Plaintiff's reliance on documents attached to her Response. *Id.* at 3.

## II. Documents Submitted by the Parties

Normally, when considering a motion to dismiss, the Court must disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment. *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). However, a Court may consider documents outside of the complaint on a motion to dismiss in three instances. First, the Court may consider outside documents pertinent to ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000). Second, the Court may consider outside documents subject to judicial notice, including court documents and matters of public record. *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006). Third, the Court may consider outside documents that are both central to the plaintiff's claims and to which the plaintiff refers in her complaint. *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997).

In support of the Motion, Defendant Bank filed its Request for Judicial Notice in Relation to Motion to Dismiss Plaintiff's Complaint [#11] (the "Request"). The Request attaches the Note [#11-1], the Deed of Trust [#11-2], the Assignment from the originating lender to Defendant Bank dated May 25, 2001 (the "Assignment") [#11-3], and a July 26, 2007 letter from Plaintiff to Defendant Bank (the "July 26, 2007 Letter") [#11-4]. The Court may consider the Note [#11-1], Deed of Trust [#11-2], and the Assignment [#11-3] for two reasons. First, they are central to Plaintiff's claims and referred to in her Complaint.

7

Second, each of these documents was either publicly filed with the office of the Denver County Clerk and Recorder or in the State Court Action.

Defendant Bank argues that the July 26, 2007 Letter should be considered by the Court because "its accuracy is not subject to reasonable dispute and/or otherwise because it is incorporated by reference in Plaintiff's complaint and [is] central to her claims." *Request* [#11] at 2. "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (citations omitted). "Thus I must look to whether: (1) [Plaintiff] referred to the [July 26, 2007 Letter] in [her] Complaint, (2) the [July 26, 2007 Letter] is central to [Plaintiff]'s claims, and (3) the copy of the [July 26, 2007 Letter] attached to the [M]otion [ ] is 'indisputably authentic.'" *Cooper & Clough, P.C. v. U.S. Bank Nat. Ass'n*, No. 11-cv-00216-WDM-KLM, 2011 WL 1772829, at *2 (D. Colo. May 10, 2011). However, "even if all three criteria are met, it is still within my discretion to consider the [July 26, 2007 Letter] in conjunction with resolving the [Motion]." *Id.* (citing *Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999)).

Here, Plaintiff does not refer to the July 26, 2007 Letter in her Complaint. *See generally Complaint* [#5]. In addition, none of Plaintiff's claims specifically rely on the July 26, 2007 Letter. Accordingly, the Court will not consider the July 26, 2007 Letter in resolving the Motion. *See Osei v. Brooks*, No. 11-cv-01135-PAB-KMT, 2012 WL 1079465, at *2 (D. Colo. March 5, 2012) (declining to consider a videotape that was only mentioned once in the complaint).

8

Plaintiff attaches 16 exhibits to her Response [#14].  All but one of these exhibits are emails or email chains containing emails from Plaintiff to individuals with "BankofAmerica.com" email addresses.[5]  A February 7, 2012 email [#14-3] also includes a spreadsheet which appears to have been one of two attachments sent with the email. The Court need not determine whether the exhibits attached to Plaintiff's Response are both central to Plaintiff's claims and referred to in her Complaint.  Documents considered by the Court on a motion to dismiss "may only be considered to show their contents, not to prove the truth of matters asserted therein."  *Tal*, 453 F.3d at 1265 n.24 (citation omitted).  Plaintiff asserts in her Complaint that she corresponded with a variety of employees of Defendant Bank.   Therefore, Plaintiff's detailed allegations that she corresponded with employees of Defendant Bank about modifications to the terms of the Note, which must be considered on a motion to dismiss, make it unnecessary for the Court to consider the written correspondence offered by the parties, which could only be considered for the purpose of showing that such correspondence took place, but not for the truth of the statements contained in the documents.  *Id.*  Further, the exception noted above that allows a defendant to submit an indisputably authentic copy of a document does not allow a plaintiff do the same.  The rule was designed to avoid a situation in which "a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied."  *GFF Corp.*, 130 F.3d at 1385.  Accordingly, the

---

[5] The Court notes that theses emails and email chains bear handwriting, mainly underlining. In addition, within the email chains most of the emails from individuals with "BankofAmerica.com" email addresses are in a font that is so light that it is unreadable on the copies that appear on the Court's electronic docket.  However, the hard copies of these documents submitted to the Office of the Clerk of the Court are legible.

Court will not consider the exhibits Plaintiff attaches to her Response in resolving the Motion.

In addition, the last three pages of Plaintiff's Response appear to be an article or a portion of an article regarding a class action lawsuit filed in Massachusetts (the "Article"). *Response* [#14] at 7-9. Plaintiff provides no argument for why the Court should consider this Article when resolving the motion to dismiss and it does not fall within any of the exceptions discussed above. Accordingly, the Court will not consider the Article in resolving the Motion.

### III. Standard of Review

### A.    Rule 12(b)(6)

The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotations and citations omitted).

 "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "[a] pleading that

offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). That said, "[s]pecific facts are not necessary[. Instead,] the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[, and is not required to] include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192 (internal citation and quotation omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

**B.     Pro Se Litigants**

The Court must construe the filings of pro se litigants liberally. *See Haines v. Kerner*, 404 U.S. 594, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the pro se litigants' advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigants'] complaint or construct a legal theory on [their] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing Hall, 935 F.2d at 1110). Additionally, pro se litigants must follow the

11

same procedural rules that govern other litigants.  *Nielson v. Price*, 17 F.3d 1276, 1277

(10th Cir. 1994).

## IV.  Analysis

### A.    The CCASF

#### 1.      Breach of Contract

Pursuant to the CCASF,

> [N]o debtor or creditor may file or maintain an action or a claim relating to a credit agreement involving a principal amount in excess of twenty-five thousand dollars unless the credit agreement is in writing and is signed by the party against whom enforcement is sought.

Colo. Rev. Stat. § 38-10-124.  The term "credit agreement" includes "[a] contract, promise,

undertaking, offer, or commitment to lend, borrow, repay, or forbear repayment of money,

to otherwise extend or receive credit . . ." and "[a]ny representations and warranties made

or omissions in connection with the negotiation, execution, administration, or performance

of, or collection of sums due under, any [ ] credit agreement[ ]."  Colo. Rev. Stat. § 38-10-

124(1)(a); *see also Jaeger v. HSBC Bank, USA, N.A.*, No. 12-cv-01736-REB-KLM, 2013

WL 1060901, at *3 (dismissing allegation that bank violated covenant of good faith and fair

dealing).  The application of the CCASF is purposefully broad to "discourage lender liability

litigation," and "abrogate judicially developed exceptions to the statute of frauds . . . which

could otherwise provide a basis for enforcing an oral loan agreement."  *Schoen v. Morris*,

15 P.3d 1094, 1098-99 (Colo. 2000) (citation omitted).

> The plain language of the statute renders representations, warranties, or omissions in connection with credit agreements inoperative unless they are reduced to writing.  Thus, as a matter of law, reliance upon such representations made in connection with negotiations for credit agreements or their waiver, modification, or extension can neither be reasonable nor

justifiable.

*Norwest Bank Lakewood, Nat'l Ass'n v. GCC Partnership*, 886 P.2d 299, 302 (Colo. App. 1994).  Accordingly, Plaintiff's breach of contract claim, which is premised on her allegation that Defendant Bank agreed to a modification to the Note, is barred by the CCASF.  *See Compl.* [#5] at 11 (breach of contract claim premised on Defendant Bank "failing to honor their agreement to modify the loan at specific terms"); *Response* [#14] at 1 ("Written correspondence between Plaintiff and defendant [ ] clearly outlines the agreement to modify the terms of the modification and demonstrates Plaintiff's belief in Defendant's representations.").  Accordingly, to the extent Plaintiff's first cause of action (breach of contract) is premised on any alleged representations by Defendant Bank regarding a modification of the Note, the Court **recommends** that the claim be **dismissed with prejudice**.  *See Berneike v. Citimortgage, Inc.*, 708 F.3d 1141, 1151 (10th Cir. 2013) (the "district court may dismiss without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend [her] complaint.") (modification in original) (quoting *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006)).

To the extent Plaintiff's allegations can be read to also include a claim that Defendant Bank breached the Deed of Trust, such claim is not barred by the CCASF.  *See Compl.* [#5] at 11 (alleging Defendant Bank violated "the terms of the [D]eed of [T]rust and Colorado law in failing to notify [P]laintiff that [it was] accelerating the loan, by failing to give [P]laintiff a proper Notice of Default and Intent to Sell[,] and by failing to properly serve [P]laintiff with a timely Notice of Foreclosure").  This claim is analyzed in Section IV.B. below.

### 2.    Fraud Claims

The application of the CCASF is not limited to contractual claims, but also bars any related tort claims that rely on alleged representations pertaining to a credit agreement that are not reduced to writing.  *See Univex Int'l, Inc. v. Orix Credit Alliance, Inc.*, 914 P.2d 1355, 1358 (Colo. 1996) ("As the plain language of the statute indicates, section 38-10-124 does not only apply to claims involving transactions which are characterized exclusively as credit agreements, but also applies to claims which merely relate to credit agreements involving a principal amount exceeding $25,000."); *Lang v. Bank of Durango*, 78 P.3d 1121, 1123-24 (Colo. Ct. App. 2003) (holding that statute barred claims for fraud and unjust enrichment arising from oral assurances regarding a credit agreement); *Hewitt v. Pitkin County Bank and Trust Co.*, 931 P.2d 456, 459 (Colo. App. 1995) (holding that statute barred claims for breach of fiduciary duty, negligent misrepresentation, and outrageous conduct where, according to plaintiff, bank orally agreed to loan modifications and not to commence foreclosure proceedings); *Norwest Bank*, 886 P.2d at 302 (holding that statute barred all tort claims arising from oral promises during negotiations to modify credit agreement).  Accordingly, the Court finds that the broad language of the CCASF applies here such that Plaintiff's fraud and deceit and intentional misrepresentation claims are barred by the CCASF because they are premised on Plaintiff's allegation that Defendant Bank agreed to a modification of the Note which was not reduced to writing.  *See Compl.* [#5] at 12-16 (fraud and deceit claim premised on Defendant Bank "represent[ing] that a loan modification . . . would be made . . ." and intentional misrepresentation claim based on Defendant Bank's "representations . . . that loan modification documents . . . were being drafted for Plaintiff's signature . . .").  The oral and email representations and concealments

14

that Plaintiff alleges support these claims are clearly related to Plaintiff's Note, and Plaintiff does not argue otherwise. Thus, Plaintiff may not maintain a fraud and deceit claim or an intentional misrepresentation claim arising from those alleged representations and concealments. *See Lang*, 78 P.3d at 1123-24.

Accordingly, the Court **recommends** that Plaintiff's third (fraud and deceit) and fourth (intentional misrepresentation) causes of action be **dismissed with prejudice**. *See Schwartz v. Bank of America, N.A.*, No. 10-cv-01225-WYD-MJW, 2011 WL 1135001, at *7, *10 (D. Colo. March 28, 2011) (finding seventh cause of action barred by the CCASF and dismissing it with prejudice).

## B.    Breach of the Deed of Trust

To the extent Plaintiff's first cause of action (breach of contract) is based on an alleged breach of the Deed of Trust, Defendant Bank argues that the Complaint fails to state a claim upon which relief may be granted. *Motion* [#10] at 8. "To succeed on a breach of contract claim in Colorado, a plaintiff must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff."[6] *Larson v. One Beacon Ins. Co.*, No. 12-cv-03150-MSK-KLM, 2013 WL 5366401, at *8 (D. Colo. Sept. 25, 2013) (internal quotation and citation omitted). Here, Plaintiff's allegations make clear that she failed to make certain payments due under the Note and the Deed of Trust. *See Compl.* [#5] at 4. The Deed of Trust states that

---

[6] A federal court with diversity-based jurisdiction over a case applies the laws of the forum state in analyzing the underlying claims. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, (1938); *Essex Ins. Co. v. Vincent,* 52 F.3d 894, 896 (10th Cir. 1995).

"Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note . . .". *Deed of Trust* [#11-2] at § 1.  Through the Note, Plaintiff agreed to pay "the full amount of each monthly payment" or be in default.  *Note* [#11-1] at § 7(B).  Therefore, Plaintiff's allegations in the Complaint make clear that she did not fully perform under the Note or the Deed of Trust.  Furthermore, Plaintiff does not allege that she cured the default under the terms of the Note or Deed of Trust.  Accordingly, Defendant Bank argues that Plaintiff fails to plead an essential element of her breach of contract claim.

However, the Deed of Trust includes specific obligations of Defendant Bank in the event that Plaintiff defaults.  Specifically, the Deed of Trust states:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . .  If Lender invokes the power of sale, Lender shall give written notice to the Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold.  Lender shall mail a copy of the notice to Borrower as provided in Section 15.

*Deed of Trust* [#11-2] at § 22.  In essence, Defendant Bank argues that any default by a plaintiff would allow the bank holding the mortgage on the plaintiff's property to foreclose without any notice to the plaintiff regardless of the foreclosure procedures delineated in the mortgage documents.  Not only is that an unjust result, it is contrary to the express language of the Deed of Trust.

The Court finds that Plaintiff's obligation to pay under the Note and Deed of Trust is a promise and that Defendant Bank's compliance with the foreclosure notice provision in the Deed of Trust is a condition precedent to foreclosure on the Property.  *See Christenson v. Citimortgage, Inc.*, No. 12-cv-02600-CMA-KLM, 2013 WL 5291947, at *7 (D. Colo. Sept. 18, 2013) (finding HUD regulations to be "a condition which must occur prior

to the lender being able to accelerate and foreclose the debt"); *see also City of Aurora, Colo. ex rel. Aurora Water v. PS Sys., Inc.*, 720 F.Supp.2d 1243, 1252 (D. Colo. 2010) ("'Conditions precedent,' as they are commonly perceived, consist of "those *facts and events, occurring after the making of a valid contract,* that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty and before the usual judicial remedies become available.'") (quoting 8-30 Corbin on Contracts § 30.7 (2010)) (emphasis in Corbin on Contracts; 13 Williston on Contracts § 38:5 (4th ed. 2000) (explaining difference between a promise and a condition precedent).   Accordingly, the Court finds that Defendant Bank's failure to meet the condition precedent could be used by Plaintiff in a lawsuit against her by the Bank "as an affirmative defense[,] but [she] may not use it as the basis for an affirmative breach of contract claim."   *Christenson*, 2013 WL 5291947, at *7.   Therefore, to the extent Plaintiff's first cause of action (breach of contract) is based on an alleged breach of the Deed of Trust, the Court **recommends** that the claim be **dismissed without prejudice**.   *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

## C.   Usury

Plaintiff's second cause of action asserts that during the loan modification negotiations with Defendant Bank, the terms offered were usurious.   *Compl.* [#5] at 12. Pursuant to Colo. Rev. Stat. § 5-12-103, "[t]he parties to any bond, bill, promissory note, *or other instrument of writing* may stipulate therein for the payment of a greater or higher rate of interest than eight percent per annum, but not exceeding forty-five percent per

annum . . ." Colo. Rev. Stat. § 5-12-103 (emphasis added).  Here, Plaintiff's usury cause of action is not premised on a written agreement, rather she argues that the alleged communications with Defendant Bank that were never put into writing contained usurious terms.  The statute does not provide for a limit on the rate of interest that can be proposed by a party. *Cf. M. Lowenstein & Sons v. British-American Mfg. Co.*, 7 F.2d 51, 53 (2d Cir. 1925) ("Usury cannot be establish unless there be shown a definite agreement to pay, in any event, an amount in excess of the legal rate of interest . . .").  Further, to the extent Plaintiff's claim could be construed as arguing that the Note was usurious, such claim fails as a matter of law.  The Note provides for an adjustable interest rate not to exceed 11.5%. *See Note* [#11-1] at §§ 2, 4(D).  Accordingly, the Court **recommends** that Plaintiff's second cause of action (usury) be **dismissed with prejudice**.  *See Berneike*, 708 F.3d at 1151 (the "district court may dismiss without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend [her] complaint.") (modification in original) (quoting *Brereton*, 434 F.3d at 1219).

## D.    Slander

In her fifth cause of action Plaintiff alleges that Defendants slandered her "by falsely reporting to credit agencies that [she] was in default on loan payments for the last eight years when in fact [she] was only late on two payments . . ." *Compl.* [#5] at 16.  Plaintiff also alleges that Defendants reported to credit agencies that she was in default on two loans "when Plaintiff only had one loan with Defendants." *Id.* at 17.  In its Motion, Defendant Bank argues that Plaintiff's slander claim is barred by the statute of limitations.

Because Plaintiff invokes the parties' diversity of citizenship as the basis of the

Court's subject matter jurisdiction in this case, the Court applies Colorado law to her slander claim, including Colorado law relating to statutes of limitations. *See Guaranty Trust Co. v. York,* 326 U.S. 99, 110 (1945) (holding that statutes of limitations are considered substantive matters for purposes of the *Erie* doctrine) (citing *Erie Railroad Co.,* 304 U.S. 64), *overruled on other grounds by Hanna v. Plumer,* 380 U.S. 460, (1965). "Whether a [Colorado] statute of limitations bars a particular claim is a question of fact," but the issue may be decided as a matter of law "if undisputed facts demonstrate that the plaintiff had the requisite information as of a particular date." *Trigg v. State Farm Mut. Auto. Ins. Co.,* 129 P.3d 1099, 1101 (Colo. App. 2005).

Under Colorado law, a claim for slander is governed by a one year statute of limitations. Colo. Rev. Stat. § 13-80-103(1)(a). A slander claim accrues when the plaintiff knew or should have known of the statements injuring her reputation. *Taylor v. Goldsmith*, 870 P.2d 1264, 1266 (Colo. App. 1994) (holding that statute of limitations barred slander claim because the claim accrued when "plaintiff learned of the statements"); *see* Colo. Rev. Stat. § 13-80-108(1) (accrual statute). Here, Plaintiff does not state in her Complaint when she first learned of the allegedly false reports to the credit bureaus or provide any information that would allow the Court to determine when this cause of action accrued. Defendant Bank relies on the July 26, 2007 Letter to support its argument that Plaintiff knew or should have known of her potential slander claim as of that date. *See Motion* [#10] at 12-13; *Reply* [#15] at 8-9. However, as noted above, the Court will not consider the July 26, 2007 Letter when resolving the Motion. *See Section II, supra.* Even though the July 26, 2007 Letter may be central to Defendant Bank's statute of limitations defense, that does not make it central to Plaintiff's claims and, therefore, it will not be considered by the Court

19

in resolving the Motion.  *See Cooper & Clough, P.C.*, 2011 WL 1772829 at *3 ("[Defendant] confuses the notion that the document may be central to its *defenses* to [Plaintiff's] claims with the requirement of *GFF* [*Corp.*, 130 F.3d 1381] that the document be central to the *claims themselves*" in order for the Court to consider the document) (emphasis in original). Accordingly, the Court **recommends** that to the extent the Motion seeks dismissal of Plaintiff's fifth cause of action (slander) based on Defendant Bank's argument that the statute of limitations has expired, it be **denied**.

## V.  Conclusion

Accordingly, for the reasons stated above, the Court respectfully **RECOMMENDS** that the Motion [#10] be **GRANTED in part** and **DENIED in part**.

The Court FURTHER **RECOMMENDS** that to the extent Plaintiff's first cause of action (breach of contract) is premised on any alleged representations by Defendant Bank regarding a modification of the Note, the claim be **DISMISSED with prejudice**.[7]

The Court FURTHER **RECOMMENDS** that Plaintiff's third (fraud and deceit) and fourth (intentional misrepresentation) causes of action be **DISMISSED with prejudice**.[8]

The Court FURTHER **RECOMMENDS** that to the extent Plaintiff's first cause of action (breach of contract) is based on an alleged breach of the Deed of Trust, the claim

---

[7]  *See Berneike*, 708 F.3d at 1151 (the "district court may dismiss without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend [her] complaint.") (modification in original) (quoting *Brereton*, 434 F.3d at 1219).

[8]  *See Schwartz*, 2011 WL 1135001, at *7, *10 (finding seventh cause of action barred by the CCASF and dismissing it with prejudice).

be **dismissed without prejudice**.[9]

The Court FURTHER **RECOMMENDS** that Plaintiff's second cause of action (usury)

be **dismissed with prejudice**.[10]

The Court FURTHER **RECOMMENDS** that to the extent the Motion seeks dismissal

of Plaintiff's fifth cause of action (slander) based on Defendant Bank's argument that the

statute of limitations has expired, it be **DENIED**.

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen

(14) days after service of this Recommendation to serve and file any written objections in

order to obtain reconsideration by the District Judge to whom this case is assigned.  A

party's failure to serve and file specific, written objections waives de novo review of the

Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S.

140, 147-48 (1985), and also waives appellate review of both factual and legal questions.

*Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91

F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must

be both timely and specific to preserve an issue for de novo review by the District Court or

for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th

---

[9] *See Reynoldson*, 907 F.2d at 127 (prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

[10] *See Berneike*, 708 F.3d at 1151 (the "district court may dismiss without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend [her] complaint.") (modification in original) (quoting *Brereton*, 434 F.3d at 1219).

Cir. 1996).

Dated:  January 23, 2014

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge