IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02109-WJM-KLM

SUSAN BURNS,

    Plaintiff,

v.

FREDDIE MAC,
BANK OF AMERICA, and
DOES 1 THROUGH 30, INCLUSIVE,

    Defendants.
_____

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendant Freddie Mac's Motion to Dismiss** [#36][1] (the "Motion"). Plaintiff filed a Response [#40] and Defendant Freddie Mac filed a Reply [#41] in further support of the Motion. Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c)(3), the Motion has been referred [#37] to the undersigned for a recommendation regarding disposition. The Court has reviewed the Motion, the Response, the Reply, the entire docket, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#36] be **GRANTED**.

---

[1] [#36] is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Recommendation.

1

## I. Background

Plaintiff asserts five causes of action against "[a]ll Defendants" and seeks injunctive relief, actual damages, punitive damages, costs, and fees for Defendants' alleged actions relating to the mortgage on Plaintiff's residence located at 548 South Pearl Street, Denver, Colorado, 80209 (the "Property"). *See generally Compl.* [#5]. In support of these claims, Plaintiff alleges that in June 2001 she signed a promissory note (the "Note") in the amount of $275,000 amortized over 30 years and a deed of trust (the "Deed of Trust") relating to the Property. *Id.* at 3. The Note was later sold to Defendant Bank. *Id.* at 3-4. Specifically, Plaintiff brings the following claims against all Defendants: breach of contract, usury, fraud and deceit, intentional misrepresentation, and slander. *Id.* at 10-17.[2]

The Court previously summarized Plaintiff's allegations and analyzed Plaintiff's claims against Defendant Bank of America in detail. *See generally Recommendation of United States Magistrate Judge* [#17] (the "Recommendation"); *Order Adopting January 23, 2014 Recommendation of Magistrate Judge and Granting in Part and Denying in Part Defendants' Motion to Dismiss* [#25] (the "Bank Order"). However, at that time Defendant Freddie Mac had not been served and, therefore, had not responded to Plaintiff's claims. *See generally Order to Show Cause* [#16]; *Minute Order* [#22]; *Return of Service* [#24]; *Order to Show Cause* [#30]; *Response to Order to Show Cause* [#31]; *Minute Order* [#32]; *Response to Order to Show Cause* [#33] (attaching proof of service). After analyzing Plaintiff's claims against Defendant Bank of America, the undersigned recommended that

---

[2] Plaintiff initially filed her Complaint on July 9, 2013 in the District Court for the City and County of Denver, Colorado (the "State Court Action"). *See Notice of Removal* [#1] at 1. However, on August 7, 2013 Defendant Bank of America removed this action based on diversity jurisdiction. *Id.* at 2-4.

all claims except the slander claim be dismissed. *Recommendation* [#17] at 20-21. Plaintiff objected [#19] and the District Judge overruled her objections and adopted the Recommendation. *Bank Order* [#25] at 7.

The Court does not reiterate the factual background included in the Recommendation and instead incorporates it by reference and summarizes certain factual allegations relevant to the Motion. *Recommendation* [#17] at 2-7. In short, Plaintiff alleges that in 2005 she failed to make two mortgage payments to Defendant Bank of America, but that she reached an agreement with Defendant Bank of America and resumed making monthly payments. *Compl.* [#35] at 3-4. Plaintiff avers that in the summer of 2007 Defendant Bank of America began to foreclose on the Property and in September 2007 refused to accept her payments toward the Note. *Id.* Plaintiff maintains that when she spoke to an employee of Defendant Bank of America regarding the refused payments, she was told that "the title work had not been properly filed by [Defendant Bank of America] for the 2005 modification [and], therefore[,] it was not binding." *Id.* Plaintiff further alleges that when she suggested that Defendant Bank of America file the title work, Defendant Bank of America's "representative stated that they no longer wished to honor the modification terms and it was '*your word against ours*' that the modification ever existed." *Id.* at 4-5 (emphasis in original). Plaintiff contends that because the Property was in foreclosure she was unable to obtain financing from any other bank. *Id.* at 5.

According to Plaintiff, in or around 2009 she discovered that Defendant Freddie Mac had purchased the Note. *Id.* Notably this is the only mention of Defendant Freddie Mac in the Complaint. Plaintiff states that she spoke to an employee of Defendant Freddie Mac and reached an agreement regarding a modification to the Note and was told that the

documents would be mailed to her for signature. *Id.* at 6. She states that the paperwork she received "[m]any months later" did not reflect the agreed upon terms. *Id.* Plaintiff maintains that after she refused the new terms, Defendant Bank of America set a foreclosure sale date either "in retaliation or as inducement." *Id.* at 7. Plaintiff contends that she and Defendant Bank of America have been repeating this cycle for several years and that "for nearly eight years [the Property] has been held in a constant state of foreclosure in which [Defendant Bank of America] would postpone the sale date but never actually remove the [P]roperty from the foreclosure rolls causing it to be continually reported to credit agencies as being in foreclosure, even when [Plaintiff] was in trial modification periods, making payments to [Defendant Bank of America] or working with [Defendant Bank of America] to modify the loan." *Id.* Plaintiff further alleges that "since 2007 [Defendant Bank of America] has been reporting that [Plaintiff] is delinquent and in foreclosure on *two* loans when she only has one loan with [Defendant Bank]." *Id.* (emphasis in original).

The remainder of Plaintiff's factual allegations all involve Defendant Bank of America and Plaintiff's interactions with that Defendant's employees. *Id.* at 7-11. In the Motion, Defendant Freddie Mac argues that Plaintiff's claims asserted against it should be dismissed for the same reasons that the Court dismissed the claims asserted against Defendant Bank of America. *Motion* [#36] at 3. With regard to the slander claim that was not dismissed as to Defendant Bank of America, Defendant Freddie Mac argues that Plaintiff has not alleged any facts to support a slander claim against it. *Id.* Specifically,

> Plaintiff's slander claim is based on allegations that false reports were made
> to credit reporting agencies concerning Plaintiff's payment history and the
> foreclosure on her property. (Compl. at 15-16 ¶¶ 27-34.) However, the

4

> Complaint only alleges that Bank of America – not Freddie Mac – reported this information to the credit agencies. (Compl. at 6.). Indeed, the Complaint contains no allegation that Freddie Mac reported anything to the credit agencies regarding Plaintiff at any time.

*Id.* at 3-4.

In her Response, Plaintiff argues that

> Bank of America, co-Defendant in this case acts on behalf of and as agent for Freddie Mac in it's handling of Freddie Mac loans. Plaintiff's loan is a Freddie Mac loan and Plaintiff was instructed by Freddie Mac to communicate through Bank of America regarding the issues that are the basis of this lawsuit. Freddie Mac is responsible for the acts of Bank of America, insomuch as they effect the Plaintiff, in spite of the fact that Plaintiff did not specifically, in every instance use the name "Freddie Mac" along with "Bank of America" in [her] earlier filings. The reference to one or the other should be sufficient to describe both as Freddie Mac designated Bank of America to act on it's behalf in it's dealings with Plaintiff.

*Response* [#40] at 1. Plaintiff goes on to allege new facts regarding Freddie Mac, such as that she corresponded with Freddie Mac employees as early as August 2007. *Id.* The remainder of the Response consists of new factual allegations either not included in the Complaint or that expand in detail on allegations made in the Complaint. *Id.* at 2-4. Plaintiff then attaches various email correspondence and a chart entitled "Loan History March 2005 - forward," which is handwritten at the top. *Id.* at 5-34.

In the Reply, Defendant Freddie Mac notes that Plaintiff offers no legal support in opposition to the Motion "[n]or does [she] attempt to show that the actual allegations in her Complaint stated a claim against Freddie Mac." *Reply* [#41] at 1. Defendant Freddie Mac then revisits its arguments regarding Plaintiff's slander claim, noting that "[n]one of Plaintiff's allegations indicate that Freddie Mac reported anything to the credit reporting agencies." *Id.* at 3. Defendant Freddie Mac further argues that Plaintiff's argument that Freddie Mac and Bank of America should be treated as one entity is not supported by the

5

law. *Id.* at 3-4. Defendant Freddie Mac maintains that to the extent Plaintiff alleges that the two Defendants are agents for each other, such argument is contrary to existing law. *Id.* at 3-4. Defendant Freddie Mac further argues that Plaintiff's new allegation that Defendants has a principal-agent relationship is conclusory and not made in the Complaint and, as a result, cannot defeat a motion to dismiss. *Id.* at 4.

## II. Documents Submitted by Plaintiff

In the Recommendation, the Court previously analyzed the documents presented by Plaintiff and Defendant Bank of America and concluded that only certain documents could be considered by the Court. The District Judge summarized these findings as follows:

> The Recommendation also discusses the documents offered for the Court's consideration in the parties' briefing on the Motion, and concludes as follows: (1) the Deed of Trust, the Promissory Note, and the assignment from the original lender to Bank of America are all appropriate for consideration as public records referred to in the Complaint and central to Plaintiff's claims; (2) the e-mails between Plaintiff and Bank of America can be considered only to show that the correspondence took place; and (3) the letter from Plaintiff dated July 26, 2007 and the news article regarding a class action lawsuit will not be considered.

*Bank Order* [#25] at 4-5. As the District Judge noted, Plaintiff did not object to that portion of the Recommendation. The Court, again, incorporates by reference this portion of the Recommendation.

As with the emails Plaintiff attached to her response to Defendant Bank of America's motion to dismiss, the Court does not consider the emails Plaintiff attaches to the Response. As previously explained by the Court:

> Normally, when considering a motion to dismiss, the Court must disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment. *Jackson*

> *v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991).  However, a Court may consider documents outside of the complaint on a motion to dismiss in three instances.  First, the Court may consider outside documents pertinent to ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).  *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000).  Second, the Court may consider outside documents subject to judicial notice, including court documents and matters of public record.  *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).  Third, the Court may consider outside documents that are both central to the plaintiff's claims and to which the plaintiff refers in her complaint.  *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997).
>
> . . .
>
> "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."  *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (citations omitted).
>
> . . .
>
> Documents considered by the Court on a motion to dismiss "may only be considered to show their contents, not to prove the truth of matters asserted therein."  *Tal* [v. Hogan], 453 F.3d [1244] at 1265 n.24 [(10th Cir. 2006)] (citation omitted). . . . [Therefore,] the written correspondence offered by the parties, [ ] could only be considered for the purpose of showing that such correspondence took place, but not for the truth of the statements contained in the documents.  *Id*.  Further, the exception noted above that allows a defendant to submit an indisputably authentic copy of a document does not allow a plaintiff do the same.  The rule was designed to avoid a situation in which "a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied."  *GFF Corp.*, 130 F.3d at 1385.  Accordingly, the Court will not consider the exhibits Plaintiff attaches to her Response in resolving the Motion.

*Recommendation* [#17] at 7-10.  In sum, the email correspondence attached to Plaintiff's Response, *Response* [#40] at 5-31, appears to be correspondence with employees of Defendant Bank of America and Defendant Freddie Mac.  These documents will not be considered by the Court for the reasons stated above and in the Recommendation.  Even

7

if the Court could consider them, it could not consider the contents of the emails. Therefore, the emails provide no support for Plaintiff's claims because they simply show that there was correspondence between Plaintiff and employees of these Defendants.

With regard to the chart attached to the Response with the handwritten heading "Loan History March 2005 - forward," *Response* [#40] at 32-34, the Court cannot consider it because it does not fall within any of the three categories discussed above.

### III.  Standard of Review

#### A.    Fed. R. Civ. P. 12(b)(6) and 8(a)

The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further

factual enhancement.'" *Id.* (citation omitted). That said, "[s]pecific facts are not necessary[. Instead,] the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[, and is not required to] include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192 (internal citation and quotation omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

"Under Rule 8, a plaintiff must provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Tuttamore v. Lappin*, 429 F. App'x 687, 689 (10th Cir. 2011) (quoting Fed. R. Civ. P. 8(a)(2)). As with Rule 12(b)(6), "to overcome a motion to dismiss, a plaintiff's allegations must move from conceivable to plausible." *Id.* Indeed, "Rule 8(a)'s mandate . . . has been incorporated into the 12(b)(6) inquiry." *U.S. ex rel. Lemmon v. Envirocare of Utah*, 614 F.3d 1163, 1171 (10th Cir. 2010). Rule 8 enables "the court and the defendants to know what claims are being asserted and to determine how to respond to those claims." *Tuttamore*, 429 F. App'x at 689.

**B.     Pro Se Litigants**

The Court must construe the filings of pro se litigants liberally.  *See Haines v. Kerner*, 404 U.S. 594, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be the pro se litigants' advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigants'] complaint or construct a legal theory on [their] behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing Hall, 935 F.2d at 1110).  Additionally, pro se litigants must follow the same procedural rules that govern other litigants.  *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### IV.  Analysis

**A.     The Claims Previously Dismissed as to Defendant Bank of America**

Plaintiff's breach of contract, fraud and deceit, and intentional misrepresentation claims against Defendant Bank of America were dismissed by the Court for failure to state a claim.  Plaintiff makes clear that her factual allegations against both Defendants are identical.  Accordingly, the Court will not reanalyze those claims here and instead incorporates by reference the portion of the Recommendation analyzing then and recommending that they be dismissed.  *See Recommendation* [#17] at 12-18.

Briefly, the Court notes that while the Recommendation focused on Plaintiff's allegations regarding her communications with Bank of America employees, her allegation that she corresponded with Ms. Rippeon, an employee of Defendant Freddie Mac, regarding her loan does not dictate a different outcome regarding Defendant Freddie Mac. As noted in the Recommendation, Colorado's Credit Agreement Statute of Frauds

("CCASF")

> is purposefully broad to "discourage lender liability litigation," and "abrogate judicially developed exceptions to the statute of frauds . . . which could otherwise provide a basis for enforcing an oral loan agreement." *Schoen v. Morris*, 15 P.3d 1094, 1098-99 (Colo. 2000) (citation omitted).
>
>> The plain language of the statute renders representations, warranties, or omissions in connection with credit agreements inoperative unless they are reduced to writing. Thus, as a matter of law, reliance upon such representations made in connection with negotiations for credit agreements or their waiver, modification, or extension can neither be reasonable nor justifiable.
>
> *Norwest Bank Lakewood, Nat'l Ass'n v. GCC Partnership*, 886 P.2d 299, 302 (Colo. App. 1994).

*Recommendation* [#17] at 12-13. Therefore, Plaintiff's breach of contract claim against Defendant Freddie Mac, which is premised on Plaintiff's allegations regarding her correspondence with Ms. Rippeon, is barred by the CCASF. As explained in more detail in the Recommendation, the CCASF also bars tort claims that rely on alleged representations pertaining to a credit agreement that are not reduced to writing. *Id.* at 14 (collecting cases). As a result, Plaintiff's fraud and deceit and intentional misrepresentation claims against Defendant Freddie Mac are barred. *Id.* at 14-15. Accordingly, to the extent Plaintiff's first cause of action (breach of contract) is premised on any alleged representations by Defendant Freddie Mac regarding a modification of the Note, the Court **recommends** that the claim be **dismissed with prejudice**. *See Berneike v. Citimortgage, Inc.*, 708 F.3d 1141, 1151 (10th Cir. 2013) (the "district court may dismiss without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend [her] complaint.") (modification in original) (quoting *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006)). The Court further **recommends** that Plaintiff's third (fraud

and deceit) and fourth (intentional misrepresentation) causes of action brought against Defendant Freddie Mac be **dismissed with prejudice**. *See Schwartz v. Bank of America, N.A.*, No. 10-cv-01225-WYD-MJW, 2011 WL 1135001, at *7, *10 (D. Colo. March 28, 2011) (finding seventh cause of action barred by the CCASF and dismissing it with prejudice).

To the extent Plaintiff attempts to allege a breach of contract claim against Defendant Freddie Mac related to the Deed of Trust, Plaintiff offers no factual allegations to support such a claim against this Defendant. However, even if the Complaint did make clear that Plaintiff was bringing a breach of contract claim against Defendant Freddie Mac relating to the Deed of Trust, such claim would fail for the reasons stated in the Recommendation.

> "To succeed on a breach of contract claim in Colorado, a plaintiff must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff."[3] *Larson v. One Beacon Ins. Co.*, No. 12-cv-03150-MSK-KLM, 2013 WL 5366401, at *8 (D. Colo. Sept. 25, 2013) (internal quotation and citation omitted). Here, Plaintiff's allegations make clear that she failed to make certain payments due under the Note and the Deed of Trust. *See Compl.* [#5] at 4. The Deed of Trust states that "Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note . . .". *Deed of Trust* [#11-2] at § 1. Through the Note, Plaintiff agreed to pay "the full amount of each monthly payment" or be in default. *Note* [#11-1] at § 7(B). Therefore, Plaintiff's allegations in the Complaint make clear that she did not fully perform under the Note or the Deed of Trust. Furthermore, Plaintiff does not allege that she cured the default under the terms of the Note or Deed of Trust. Accordingly, Defendant Bank [of America] argues that Plaintiff fails to plead an essential element of her breach of contract claim.
>
> However, the Deed of Trust includes specific obligations of Defendant Bank [of America] in the event that Plaintiff defaults. Specifically, the Deed of Trust

---

[3] A federal court with diversity-based jurisdiction over a case applies the laws of the forum state in analyzing the underlying claims. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, (1938); *Essex Ins. Co. v. Vincent,* 52 F.3d 894, 896 (10th Cir. 1995).

states:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . .  If Lender invokes the power of sale, Lender shall give written notice to the Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold.  Lender shall mail a copy of the notice to Borrower as provided in Section 15.

*Deed of Trust* [#11-2] at § 22.  In essence, Defendant Bank [of America] argues that any default by a plaintiff would allow the bank holding the mortgage on the plaintiff's property to foreclose without any notice to the plaintiff regardless of the foreclosure procedures delineated in the mortgage documents.  Not only is that an unjust result, it is contrary to the express language of the Deed of Trust.

The Court finds that Plaintiff's obligation to pay under the Note and Deed of Trust is a promise and that Defendant Bank [of America]'s compliance with the foreclosure notice provision in the Deed of Trust is a condition precedent to foreclosure on the Property.  *See Christenson v. Citimortgage, Inc.*, No. 12-cv-02600-CMA-KLM, 2013 WL 5291947, at *7 (D. Colo. Sept. 18, 2013) (finding HUD regulations to be "a condition which must occur prior to the lender being able to accelerate and foreclose the debt"); *see also City of Aurora, Colo. ex rel. Aurora Water v. PS Sys., Inc.*, 720 F.Supp.2d 1243, 1252 (D. Colo. 2010) ("'Conditions precedent,' as they are commonly perceived, consist of "those *facts and events, occurring after the making of a valid contract,* that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty and before the usual judicial remedies become available.'") (quoting 8-30 Corbin on Contracts § 30.7 (2010)) (emphasis in Corbin on Contracts); 13 Williston on Contracts § 38:5 (4th ed. 2000) (explaining difference between a promise and a condition precedent).  Accordingly, the Court finds that Defendant Bank [of America]'s failure to meet the condition precedent could be used by Plaintiff in a lawsuit against her by the Bank "as an affirmative defense[,] but [she] may not use it as the basis for an affirmative breach of contract claim."  *Christenson*, 2013 WL 5291947, at *7.

*Recommendation* [#17] at 15-17.  Accordingly, to the extent Plaintiff's first cause of action (breach of contract) is based on an alleged breach of the Deed of Trust by Defendant Freddie Mac, the Court **recommends** that the claim be **dismissed without prejudice**.  *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (prejudice should not

attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

As explained in the Recommendation, to the extent Plaintiff brings a usury claim, that claim fails as a matter of law.

> Plaintiff's second cause of action asserts that during the loan modification negotiations with Defendant Bank [of America], the terms offered were usurious. *Compl.* [#5] at 12. Pursuant to Colo. Rev. Stat. § 5-12-103, "[t]he parties to any bond, bill, promissory note, *or other instrument of writing* may stipulate therein for the payment of a greater or higher rate of interest than eight percent per annum, but not exceeding forty-five percent per annum . . ." Colo. Rev. Stat. § 5-12-103 (emphasis added). Here, Plaintiff's usury cause of action is not premised on a written agreement, rather she argues that the alleged communications with Defendant Bank [of America] that were never put into writing contained usurious terms. The statute does not provide for a limit on the rate of interest that can be proposed by a party. *Cf. M. Lowenstein & Sons v. British-American Mfg. Co.*, 7 F.2d 51, 53 (2d Cir. 1925) ("Usury cannot be established unless there be shown a definite agreement to pay, in any event, an amount in excess of the legal rate of interest . . ."). Further, to the extent Plaintiff's claim could be construed as arguing that the Note was usurious, such claim fails as a matter of law. The Note provides for an adjustable interest rate not to exceed 11.5%. *See Note* [#11-1] at §§ 2, 4(D).

*Recommendation* [#17] at 17-18. Accordingly, the Court **recommends** that Plaintiff's second cause of action (usury) be **dismissed with prejudice** to the extent it is asserted against Defendant Freddie Mac. *See Berneike*, 708 F.3d at 1151 (the "district court may dismiss without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend [her] complaint.") (modification in original) (quoting *Brereton*, 434 F.3d at 1219).

**B. Slander**

In her fifth cause of action Plaintiff makes the conclusory allegation that "[all] Defendants" slandered her "by falsely reporting to credit agencies that [she] was in default

on loan payments for the last eight years when in fact [she] was only late on two payments . . ." *Compl.* [#5] at 16. Plaintiff also alleges that "[a]ll Defendants" reported to credit agencies that she was in default on two loans "when Plaintiff only had one loan with Defendants." *Id.* at 17. However, Plaintiff's more specific factual allegations made in support of this claim are only directed at Defendant Bank of America:

> During all of this time, now nearly eight years, Ms. Burns' property has been held in a constant state of foreclosure in which Bank of America would postpone the sale date but never actually remove the property from the foreclosure rolls causing it to be continually reported to credit agencies as being in foreclosure, even when Ms. Burns was in trail [sic] modification periods, making payments to the bank or working with the bank to modify the loan.
>
> And even during the periods of time when Ms. Burns was making the trial payments in the amounts designated by Bank of America, they were reporting to credit agencies that she was not making payments.
>
> To make matters worse, since 2007 Bank of America has been reporting that Ms. Burns is delinquent and in foreclosure on *two* loans when she only has one loan with Bank of America.
>
> Ms. Burns was only delinquent on two payments (in 2005), and Bank of America accepted approximately 51 payments since then. However, Bank of America has consistently reported to credit agencies that Ms. Burns is not making payments, even while they were accepting them.
>
> Other payments were tendered and refused by Bank of America. Therefore, Bank of America's reports to credit agencies that Ms. Burns was not making payments are false and slanderous and have damaged her credibility.

*Compl.* [#5] at 7 (emphasis in original).

While Plaintiff argues in her Response that all allegations made against Defendant Bank of America should be construed as implicitly referring to both Defendants, *Response* [#40] at 1, her position is not supported by the law. As the Supreme Court has explained, "the most basic features of an agency relationship are missing here. Agency requires more

15

than mere authorization to assert a particular interest. An essential element of agency is the principal's right to control the agent's actions." *Hollingsworth v. Perry*, --- U.S. ---, 133 S.Ct. 2652, 2665 (2013) (quotation marks and citation omitted); *Villalpando v. Denver Health & Hosp. Auth.*, 181 P.3d 357, 362 (Colo. App. 2007) ("An agency relationship 'results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'" (quoting *Rush Creek Solutions, Inc. v. Ute Mountain Ute Tribe*, 107 P.3d 402, 407 (Colo. App. 2004)). Nowhere in the Complaint does Plaintiff allege such a relationship or facts that would allow the Court to infer such a relationship. Instead, she merely alleges that "Freddie Mac had purchased her loan . . . ." *Compl.* [#5] at 5.

Further, Plaintiff, as the party bringing this case, is required to "explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The general rule that pro se pleadings must be construed liberally has limits and "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). The twin purposes of a complaint are to give the opposing parties fair notice of the basis for the claims against them so that they may respond and to allow the Court to conclude that the allegations, if proven, show that the plaintiff is entitled to relief. *See Monument Builders of Greater Kansas City, Inc. v. Am. Cemetery Ass'n of Kansas*, 891 F.2d 1473, 1480 (10th Cir. 1989). The requirements of Federal Rule of Civil Procedure 8 are designed to meet these purposes. *See TV Commc'ns Network, Inc. v.*

*ESPN, Inc.*, 767 F. Supp. 1062, 1069 (D. Colo. 1991), *aff'd*, 964 F.2d 1022 (10th Cir. 1992). Rule 8(a) provides that a complaint "must contain (1) a short and plain statement of the grounds for the court's jurisdiction, . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." The philosophy of Rule 8(a) is reinforced by Rule 8(d)(1), which provides that "[e]ach allegation must be simple, concise, and direct." Taken together, Rules 8(a) and (d)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules. Plaintiff's Complaint makes clear which Defendant took various actions. Nowhere in the Complaint does she allege that Freddie Mac reported information to credit agencies. The fact that in her "Fifth Cause of Action," she names "All Defendants" and asserts conclusory allegations against "All Defendants," does not save this claim. *Iqbal*, 556 U.S. at 677 (2009) ("[A] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do . . . ."). Accordingly, the Court **recommends** that Plaintiff's fifth cause of action (slander) against Defendant Freddie Mac be **dismissed without prejudice** pursuant to Fed. R. Civ. P. 12 and Fed. R. Civ. P. 8.

## V. Conclusion[4]

Accordingly, for the reasons stated above, the Court respectfully **RECOMMENDS** that the Motion [#36] be **GRANTED** and that all of Plaintiff's claims against Defendant Freddie Mac be **dismissed** as follows:

The Court FURTHER **RECOMMENDS** that to the extent Plaintiff's first cause of

---

[4] If this Recommendation is adopted, the remaining claims will be the slander claim asserted against Defendant Bank of America and any claims asserted against the John/Jane Doe Defendants.

action (breach of contract) is premised on any alleged representations by Defendant Freddie Mac regarding a modification of the Note, the claim be **DISMISSED with prejudice**.[5]

The Court FURTHER **RECOMMENDS** that Plaintiff's third (fraud and deceit) and fourth (intentional misrepresentation) causes of action against Defendant Freddie Mac be **DISMISSED with prejudice**.[6]

The Court FURTHER **RECOMMENDS** that to the extent Plaintiff's first cause of action (breach of contract) is based on an alleged breach of the Deed of Trust by Defendant Freddie Mac, the claim be **dismissed without prejudice**.[7]

The Court FURTHER **RECOMMENDS** that Plaintiff's second cause of action (usury) against Defendant Freddie Mac be **dismissed with prejudice**.[8]

The Court FURTHER **RECOMMENDS** that Plaintiff's fifth cause of action (slander) against Defendant Freddie Mac be **dismissed without prejudice**.[9]

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen

---

[5] *See Berneike*, 708 F.3d at 1151 (the "district court may dismiss without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend [her] complaint.") (modification in original) (quoting *Brereton*, 434 F.3d at 1219).

[6] *See Schwartz*, 2011 WL 1135001, at *7, *10 (finding seventh cause of action barred by the CCASF and dismissing it with prejudice).

[7] *See Reynoldson*, 907 F.2d at 127 (prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

[8] *See Berneike*, 708 F.3d at 1151 (the "district court may dismiss without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend [her] complaint.") (modification in original) (quoting *Brereton*, 434 F.3d at 1219).

[9] *See Carbajal v. City and County of Denver*, 502 F. App'x. 715, 716 (10th Cir. 2012) (unpublished Order and Judgment), *cert. denied*, 134 S.Ct. 103 (2013).

(14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: June 8, 2015

BY THE COURT:

*[signature]*

Kristen L. Mix
United States Magistrate Judge